# AFFIDAVIT

I, Joseph Colanduono, being duly sworn, depose and say:

1. I am a member of the Providence Police Department and have been continuously employed in this capacity for the past 19 years. I hold the rank of Investigator. I have been assigned to the Providence Police Narcotics and Organized Crime Bureau for approximately 12 years and to a Drug Enforcement Administration (DEA) Task Force comprised of federal, state and local law enforcement officers for over 2 years. I am designated a Task Force Officer by the DEA. My duties include, but are not limited to, investigation of violations of the Uniform Controlled Substances Act. I have attended numerous schools and seminars concerning the investigation of drug offenses, including a 2-week school sponsored by the Drug Enforcement Administration (DEA).

2. I make this affidavit in support of the Complaint for Forfeiture In Rem against the following: (a) $2,000.00 dollars in U.S. currency seized from the person of **DEREK CARTER** on August 29, 2006; (b) $8,900.00 dollars in U.S. currency seized from the dwelling of **DEREK CARTER** at 24-26 Wisdom Ave. 2nd floor, Providence, Rhode Island on August 29, 2006; (c) One men's Rolex watch, 2 necklaces, 2 pendants and 3 diamond earrings all with an appraised value

of $30,350.00 dollars; and (d) Account numbers 86428476, 86428467, and 85230511 containing a total of $18,263.46 dollars located at the Pawtucket Credit Union, 1200 Central Avenue, Pawtucket, Rhode Island.

3. During the month of August 2006, I, along with other members of the DEA Task Force, conducted an investigation into a subject initially identified as 'Cliff', alias John Doe. With the assistance of a DEA confidential and reliable source, it was learned that 'Cliff' sold cocaine in large quantities and had a stash house located at 62 Glover St., 2nd floor, Providence, Rhode Island. This source that has assisted me in other narcotic investigations has been found to have a vast knowledge of the drug trade and has directly aided in the seizures of other narcotics and proceeds along with the arrests and convictions of several individuals.

4. On August 29, 2006, my confidential source revealed that the 'Cliff' subject was at the stash house at 62 Glover St. and was awaiting the arrival of a steady customer who frequently purchases large quantities of cocaine from the 'Cliff' subject. The source revealed that this subject was a black male known as **'DC'** who had a large muscular build. The source also revealed that the **'DC'** subject operates vehicles with Massachusetts registrations

and that he recently has been observed operating a Nissan Maxima. TFO Robert Enright and I responded into the area of 62 Glover St., a location that had been under surveillance throughout the month, and observed outside this location the 'Cliff' subject conversing with a black male seated in a gold Nissan Maxima bearing Massachusetts Registration # 18VM63. After a brief period, the black male exited the Maxima holding a white plastic Expressions bag in his hand. This bag appeared to be empty. This subject was later identified as **DEREK CARTER**. **CARTER** Followed The 'Cliff' subject to the rear of 62 Glover St. and both entered the rear with 'Cliff' using keys to enter. Within 10 minutes, **CARTER** exited this same door and walked to his vehicle. This time, I observed that the white Expressions bag was nearly full and weighted down. **CARTER** entered the Maxima and drove off. TFO Enright and I followed the Maxima and as **CARTER** drove onto Wisdom Avenue, TFO Enright activated the undercover vehicle's lights and siren in an attempt to halt said vehicle. **CARTER** immediately turned into the driveway of 24-26 Wisdom Ave. and parked in the rear. He attempted to flee but I was able to detain him. As I inquired into his identity, TFO Enright told me to place him under arrest and CARTER was placed in handcuffs. On the front passenger seat of the

vehicle, I observed the white Expressions bag and directly on top was a large clear plastic bag that held a large quantity of what was later determined to be cocaine. Underneath this bag was a shoebox that contained an additional 2 kilograms of cocaine.

5. From the person of **DEREK CARTER**, I seized 3 cellular phones, a set of keys and the $2,000.00 dollars in US currency described in paragraph 2a.

6. After **CARTER** was read and explained his Constitutional Rights, he was asked for Consent to Search his dwelling at 24-26 Wisdom Ave., 2nd floor. **CARTER** consented and TFO Enright used keys seized from **CARTER** to open the exterior door to the building. On the 2nd floor, TFO Enright spoke with Gretchen Renaud who stated that she and **CARTER** resided together in the apartment. When Renaud was told the reason for our presence, she asked to speak with an attorney and she did contact an attorney by telephone. After the telephone conversation, Renaud also granted us consent to search the apartment. TFO Enright had a conversation with Renaud who revealed that she had observed police take **CARTER** and soon thereafter she took a large sum of U.S. currency and assorted jewelry belonging to **DEREK CARTER**, placed it in a bag, and brought it to a tenant on the 1st floor for safekeeping. Brie Williams on

the 1st floor told investigators that Renaud came downstairs in haste and asked if she would hold onto this bag for a period of time. Investigators took custody of this bag which contained the $8,900.00 dollars in U.S. currency, described in paragraph 2b, along with the Rolex watch, 2 necklaces, 2 pendants, and 3 diamond earrings described in paragraph 2c.

7. An additional search of the 2nd floor revealed paperwork in the name of **DEREK CARTER** along with several Pawtucket Credit Union bank statements in his name. On August 30, 2006, I spoke with an employee of the Pawtucket Credit Union who revealed that **DEREK CARTER** had three separate accounts at this institution that totaled $18,263.46 dollars and are described in paragraph 2d. Records indicate that **CARTER** made large cash deposits to these accounts on a weekly basis and dispersed the cash throughout the three accounts. Based on my training and experience, I believe that this type of disbursement activity is consistent with attempts to conceal narcotics proceeds. This type of disbursement makes it difficult for banking institutions to red flag suspicious activity. I obtained a seizure warrant and seized these three accounts.

8. CARTER was arrested and charged with possession with intent to deliver cocaine and possession of between

one and five kilograms of cocaine. These charges are pending in the Rhode Island Superior Court. A check of **CARTER'S** Rhode Island Criminal History indicates that in 1998 **CARTER** was convicted of possession of cocaine and in 2004 he was convicted of possession with intent to deliver cocaine.

9. I have been involved in over 1000 controlled substance investigations and in numerous seizures of controlled substances including cocaine powder, crack cocaine, and heroin and have been involved in numerous searches of dwellings and buildings out of which controlled substances have been sold or stored, and in which drug traffickers have resided. I have provided expert testimony in both state and federal courts concerning the possession, manufacturing and distribution of controlled substances. I have received training from the DEA in the means and methods used by persons in the drug trafficking business.

10. Based upon the foregoing, there is probable cause to believe that the $2,000.00 in U.S. currency, described in paragraph 2a, is proceeds derived from the illegal sales of controlled substances, that is, cocaine, and constitutes the proceeds of the exchange of controlled substances, and that said currency is, therefore, subject to seizure and forfeiture pursuant to Title 21 U.S.C. § 881(a) (6).

11. Based upon the foregoing, there is probable cause to believe that the $8,900.00 dollars, described in paragraph 2b, is proceeds derived from the illegal sales of controlled substances, that is, cocaine, and constitutes the proceeds of the exchange of controlled substances, and that said currency is, therefore, subject to seizure and forfeiture pursuant to Title 21 U.S.C. § 881 (a) (6).

12. Based on the foregoing, there is probable cause to believe that the Rolex watch, 2 necklaces, 2 pendants and 3 diamond earrings with a certifiable appraisal of $30,350 dollars, described in paragraph 2c, were assets derived from the illegal sales of controlled substances, that is, cocaine and constitute the proceeds of the exchange of controlled substances, and that said jewelry is, therefore, subject to seizure and forfeiture pursuant to Title 21 U.S.C. § 881 (a) (6).

13. Based on the foregoing, there is probable cause to believe that the three Pawtucket Credit Union accounts totaling $18, 263.46 dollars, described in paragraph 2d, are assets derived from the illegal sales of controlled substances, that is, cocaine, and constitute the proceeds of the exchange of controlled substances, and that said proceeds are, therefore, subject to seizure and forfeiture pursuant to Title 21 U.S.C. § 881 (a) (6).

JOSEPH COLANDUONO
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me
this 29th day of January, 2007.

Notary Public

My commission expires: 8/27/09